IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: Integrated Health Services, Inc., *et al.* ) | |
| _____ ) | |
| ) | |
| INTEGRATED HEALTH SERVICES INC., *et al.*, ) | |
| ) | |
| Cross-Appellant, ) | |
| ) | |
| v. ) | Civil Action No. 07-112 (GMS) |
| ) | |
| FSQ, INC. f/k/a Five Star Quality Care Inc., *et al.*, ) | |
| ) | |
| Cross-Appellees. ) | Bankruptcy Case No. 00-389 |
| ) | Adversary Proceeding No. 02-5193 |
| _____ ) | |

### MOTION OF APPELLANTS, CROSS-APPELLEES
### TO DISMISS CROSS-APPEAL

FSQ, Inc., *et al.* (collectively "Appellants") by this Motion move the Court to dismiss Integrated Liquidating LLC's ("Appellee") cross-appeal, because Appellee lacks standing to have filed an appeal. In support of this Motion to Dismiss, Appellants state as follows:

### BACKGROUND

1.    On or about August 9, 2002, the Appellants commenced an adversary proceeding entitled FSQ, Inc. et al. v. Integrated Health Services, Inc. et al., United States Bankruptcy Court for the District of Delaware, Adv. Proc. No. 02-5193 (the "Adversary Proceeding"), in which Appellee and others were named as defendants.

2.    On January 9, 2007, the Bankruptcy Court (Walrath J.) entered its Opinion (the "Opinion") and Order (the "Order") in the Adversary Proceeding, denying FSQ Appellants' Motion for Summary Judgment and granting Appellee's Motion for

Summary Judgment. A copy of the Order and Opinion are attached hereto as **Exhibits A and B**, respectively.

3.    On January 16, 2007, the Appellants filed a Notice of Appeal from the Order (the "<u>Notice of Cross-Appeal</u>"), which appeal has been docketed in this Court as Case No. 07-111 (GMS).

4.    On January 26, 2007, IHS filed a cross-appeal, which cross-appeal has been docketed in this Court as Case No. 07-112. A copy of the Notice of Cross-appeal is attached as **Exhibit C**.

<u>**ARGUMENT**</u>

5.    Because Appellee has not been aggrieved in any manner by the Order, it lacks standing to appeal and its cross-appeal is properly dismissed.

6.    The Notice of Cross-appeal states in relevant part as follows:

> The notice of cross-appeal is being filed out of an abundance of caution to preserve the Liquidating LLC's right to argue on appeal that ample additional grounds existed to grant summary judgment in favor of the Liquidating LLC, which were not the basis of the Order.

7.    Similarly, the Appellee's Counter-Designation of Items to be Included in the Record on Appeal and Statement of Issue on Cross-Appeal ("<u>Statement of Issue on Cross-Appeal</u>") provides in pertinent part as follows:

> The Liquidating LLC filed its cross-appeal in order to preserve its right to argue that this Court should affirm the Bankruptcy Court's decision to grant summary judgment in favor of the Liquidating LLC not only for the reasons given by the Bankruptcy Court in its opinion, but based on other grounds advanced by the Liquidating LLC in the proceedings below and/or otherwise suggested by the record.

8.    Taking the Appellee at its word, as set forth in the Notice of Cross-Appeal and the Statement of Issue on Cross-Appeal, there is no ruling of the Bankruptcy Court from which Appellee seeks relief. Rather, the Appellee has filed the cross-appeal "in an

abundance of caution" to preserve its rights to argue that it could have won below on other or additional grounds than those ruled upon by the Bankruptcy Court. On this standard, in an "abundance of caution" every single appellee would file a cross-appeal.

## THE APPELLEE LACKS STANDING TO APPEAL

9.      The time to identify on cross-appeal any issue by which it was aggrieved was upon filing the Statement of Issue on Cross-Appeal, filed in February 2007. The Appellee has not identified in its Statement of Issue on Cross-Appeal any ruling from which it was aggrieved. The sole issue identified by the Appellee as the reason for the cross-appeal is preserving its ability to argue that it should have won on grounds other than that accepted by the Bankruptcy Court in the Opinion. As such, the Appellee lacks standing to appeal.

10.     To have standing to appeal a party must be aggrieved by the judgment. See Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 333-34, 100 St. Ct. 1166, 1171-72 (1980); Armtek Indus. Inc. v. Employer of Wausau, 952 F.2d 756, 759 n.3 (3rd Cir. 1991); Watson v. City of Newark, 746 F.2d 1008, 1009 (3rd Cir. 1984); Durbin v. Durbin, 130 F.3d 76, 84 (9th Cir. 1997); 20 J. Moore's Federal Practice § 303.10 [2] [a] (3rd Edition 2006).

11.     The Appellee cites one case as authority for its standing to appeal. Scott v. University of Delaware, et al., 601 F.2d 76, 83 (3d Cir. 1979). The Scott case does not stand for the proposition for which Appellee cites it. The Scott case involved the failure to take a cross-appeal. The Scott case did not involve consideration of the standing of a non-aggrieved party to take a cross-appeal. In the face of overwhelming authority for the proposition that a non-aggrieved party is without standing to appeal, the Scott case is irrelevant to the matter at hand. Moreover, the decision has been abrogated. See EF Operating Corp. v. American Bldgs., 993 F.2d 1046 (3rd Cir. 1993); Young Radiator

Co. v. Celotex Corp., 881 F.2d 1408 (7th Cir. 1989); Miller v. Hygrade Food Products Corp., 89 F. Supp.2d 643 (E.D. Pa. 2000); Osgood v. Harrah's Entertainment, Inc., 202 F.R.D. 115 (D. N.J. 2001). Prior criticism includes Savage v. Cache Valley Dairy Ass'n., 737 F.2d 887 (10th Cir. 1986).

## SUMMARY

12.    The Opinion and Order provided the Appellee with full relief. Appellee already filed its Statement of Issue on Appeal and did not identify any issue by which it is aggrieved. The Appellee by its own admission is not aggrieved by the Bankruptcy Court's Opinion and ruling. Preservation of arguments does not form the basis for an appeal. Therefore, the Appellee's cross-appeal should be dismissed. To allow the cross-appeal to stand will set the precedent of every successful litigant taking a cross-appeal, clogging the dockets and the court calendars with unnecessary "protective" filings.

WHEREFORE, the Appellants respectfully request that the Court grant this motion and dismiss the Appellee's cross-appeal.

Respectfully submitted,

**FSQ, INC.,**
*f/k/a* **FIVE STAR QUALITY CARE, INC.**
**Five Star Quality Care-Colorado, LLC,**
*f/k/a* **SHOPCO-Colorado, LLC**
**Five Star Quality Care-GA, LLC,**
*f/k/a* **SHOPCO-GA, LLC,**
**Five Star Quality Care-IA, LLC,**
*f/k/a* **SHOPCO-IA, LLC,**
**Five Star Quality Care-IA, Inc.,**
*f/k/a* **SNH-Iowa, Inc.,**
**Five Star Quality Care-MI, LLC,**
*f/k/a* **SHOPCO-MI, LLC,**
**Five Star Quality Care-NE, LLC,**
*f/k/a* **SHOPCO-NE, LLC,**
**Five Star Quality Care-NE, Inc.,**
*f/k/a* **SNH-Nebraska, Inc.,**

By their attorneys,

Mark Minuti (No. 2659)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
(302) 421-6840

– and –

Gayle P. Ehrlich
Jeffrey E. Francis
**SULLIVAN & WORCESTER LLP**
One Post Office Square
Boston, MA  02109
(617) 338-2800

Dated:  May 24, 2007

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE:                              ) Chapter 11
                                    )
INTEGRATED HEALTH SERVICES,         )
INC., et al.,                       ) Case No. 00-00389
                                    )
            Debtors.                )
                                    )
_____     )
                                    ) Adversary No. 02-05193
FSQ, INC., f/k/a FIVE STAR          )
QUALITY CARE, INC., et al.,         )
                                    )
            Plaintiffs,             )
                                    )
      vs.                           )
                                    )
                                    )
INTEGRATED HEALTH SERVICES,         )
INC., et al.,                       )
                                    )

            Defendants.

### OPINION[1]

Before the Court are cross motions for summary judgment.
For the reasons stated below, the Court will deny the motion of
FSQ, Inc. ("FSQ") and grant the motion of IHS Liquidating LLC and
its related entities (collectively "IHS").

I.    BACKGROUND

On February 2, 2000, Integrated Health Services, Inc., IHS
Licensees, and CCA of Midwest, Inc. (collectively "the Debtors")

_____

[1] This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052.

and several of their affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On or about April 12, 2000, the Debtors filed a Motion for approval of a settlement agreement with Senior Housing Properties Trust, the predecessor to FSQ ("the FSQ Settlement").  The FSQ Settlement provided for the transfer of leasehold and security interests in certain health care facilities ("the Transfer Facilities") from the Debtors to FSQ and its licensees.

The United States, acting on behalf of the Department of Health and Human Services, filed an objection to the FSQ Settlement, asserting that the Debtors could not convey their interests in the Transfer Facilities while continuing to bill under their medicare provider agreements.  The objection was resolved through a stipulation ("the Stipulation") which provided for an orderly transfer of the Debtors' medicare provider agreements to FSQ, once it obtained licenses.  FSQ agreed to pay the United States $10,000 per facility to cure all existing financial defaults under the Debtors' provider agreements.  The United States waived any other claims it had against the Debtors with respect to the Transfer Facilities, except claims under the False Claims Act.  With the objection of the United States resolved, the FSQ Settlement was approved by Order dated July 7, 2000.  The transaction closed effective July 1, 2000.

2

Pursuant to the FSQ Settlement, the Debtors entered into an agreement (the "Management Agreement") with FSQ dated July 10, 2000. Under the Management Agreement, FSQ agreed to manage the facilities and the Debtors agreed to bill for those services under the Debtors' provider agreements and to pay FSQ all receipts for the facilities' operations between the transaction closing date and the time FSQ obtained licenses to operate those facilities ("the Transition Period"). The Management Agreement specifically provided that any monies received by the Debtors for Medicare-covered services performed at the Transfer Facilities during the Transition Period would be forwarded by the Debtors to FSQ.

FSQ obtained licenses at the Transfer Facilities at various times between October 1, 2000, and April 2, 2001. On October 10, 2001, FSQ and the Debtors executed a letter agreement ("the Letter Agreement") regarding the final reconciliation of various claims between FSQ and the Debtors arising under the FSQ Settlement. At that time, the parties agreed that the Debtors owed FSQ $1.45 million, plus any amounts due for reconciliation of the periodic interim payments made by the United States (the "PIP Receivable").

On February 5, 2003, the Debtors filed a Disclosure Statement relating to their Joint Plan of Reorganization ("the Disclosure Statement"). The Disclosure Statement outlined an

3

additional settlement ("the US Agreement") resolving disputes between the Debtors and the United States relating to many of the Debtors' facilities and relating to claims for (1) alleged violations of Medicare regulations and the False Claims Act in the approximate amount of $41 million, subject to treble damages (the "False Claims") and (2) $140 million in contractual indebtedness arising from the Debtors' purchase of First American Health Care of Georgia, Inc.  Pursuant to the US Agreement, the United States was to receive a payment of $19.1 million for claims arising under the False Claims Act, a portion of which ($17.1 million) was to be set off against underpayments due by the United States to the Debtors for various facilities.  The US Agreement was approved on February 13, 2002, pursuant to the Order confirming the Debtors' Plan of Reorganization.  The Plan also provided for the transfer of substantially all the Debtors' remaining facilities to Abe Briarwood Corporation and/or its designee.  With the approval of the Plan, the Debtors were left with few remaining liquid assets.

On March 17, 2003, FSQ filed a Complaint against the Debtors contending that the Debtors owe FSQ for services rendered at the Transfer Facilities during the Transition Period.  The Complaint was amended on March 17, 2003, to add the United States as a defendant.  In the Amended Complaint FSQ asserted that the United States refused to pay the PIP Receivable because it was offset

against the False Claims pursuant to the US Agreement.  FSQ seeks
enforcement of the Settlement Agreement, Management Agreement and
the Letter Agreement which provide that the Debtors are to remit
to FSQ payments for services rendered at the Transfer Facilities
during the Transition Period.  FSQ specifically asserts it is
entitled to be paid $1,268,762 for the PIP Receivable.

On April 21, 2003, the United States filed a Motion to
Dismiss the Counts of the Amended Complaint pertaining to it
pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil
Procedure, made applicable by Rule 7012(b) of the Federal Rules
of Bankruptcy Procedure.  That Motion was granted by Order and
Memorandum Opinion dated December 30, 2003.  In that Opinion the
Court concluded that the tort claims asserted against the United
States were precluded by the doctrine of sovereign immunity and
the Federal Tort Claims Act.  The Court further held that the
United States had not breached the Stipulation by entering into
the US Agreement because the Stipulation expressly preserved and
did not waive the False Claims.

On May 19, 2003, the Debtors filed a Motion to Dismiss the
Amended Complaint pursuant to Rule 12(b)(6).  That Motion was
denied by Amended Opinion and Order dated March 23, 2004, because
the Court concluded that there were material issues of disputed
fact regarding whether the Letter Agreement precluded FSQ from
asserting a claim against the Debtors for the PIP Receivable.

5

Subsequently, on June 17, 2005, FSQ filed a Motion for Summary Judgment.  IHS responded with a Cross Motion for Summary Judgment.  With the filing of FSQ's Further Reply on July 31, 2006, the cross motions are fully briefed and ripe for decision.

II.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (E) & (O).

III. DISCUSSION

FSQ asserts that it is entitled to the PIP Receivable as it arose during the Transition Period when FSQ was operating the facilities pursuant to the Management Agreement.  It asserts that the United States is refusing to pay the PIP Receivable because it had the right to offset that sum against the False Claims under the US Agreement.  FSQ alleges that as a result of the United States' refusal to pay, it has a claim against the Debtors.

IHS disputes FSQ's assertions.  It argues that the United States did not offset the PIP Receivable against the False Claims pursuant to the US Agreement.  Instead, IHS asserts that the United States is refusing to pay the PIP Receivable because it is not due according to the express terms of the Stipulation.  As a result, IHS asserts that FSQ has no claim against the United

6

States or the Debtors' estate.

A.   Law of the Case

As a preliminary matter, FSQ asserts that IHS's argument is precluded by the doctrine of the law of the case because in denying the United States' motion to dismiss, the Court found that the United States had, in fact, offset the PIP Receivable against the False Claims in accordance with the US Agreement. The doctrine of the law of the case provides that when a court decides a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.  In re Continental Airlines, Inc., 279 F.3d 226, 232-34 (3d Cir. 2002). This rule promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." Id. at 233 (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 826 (1988)).

IHS argues, however, that the doctrine of the law of the case is not available, when the prior decision was in the context of a motion to dismiss.  See, e.g., McKenzie v. BellSouth Telecomms., Inc., 219 F.3d 508, 513 (6th Cir. 2000) (concluding that "our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment"); Perez-Ruis v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994) (concluding that "[i]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute

7

the law of the case."). <u>See also</u> <u>Council of Alternative</u>
<u>Political Parties v. Hooks</u>, 179 F.3d 64, 69-70 (3d Cir. 1999)
(holding that "while the law of the case doctrine bars courts
from reconsidering matters actually decided, it does not prohibit
courts from revisiting matters that are 'avowedly preliminary or
tentative'" and, therefore, court was free to determine the
merits of the case despite the issuance of a preliminary
injunction).

In considering a motion to dismiss under Rule 12(b)(6), a
court is required to accept all factual assertions in the light
most favorable to the non-moving party. <u>See, e.g.</u>, <u>Rocks v.</u>
<u>Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989). In the decision
on the Motions to Dismiss in this case, therefore, the Court
accepted the allegations of FSQ that the United States had offset
the PIP Receivable against the False Claims pursuant to the US
Agreement. Nonetheless, the Court concluded that the United
States had not violated the Stipulation by entering into the US
Agreement, because paragraph 11 of the Stipulation specifically
provided that "[t]his Stipulation is not intended to constitute a
release, waiver or compromise of any claims against [the Debtors]
under the False Claims Act."

The effect of the decisions on the Motions to Dismiss
cannot, however, constitute law of the case and require that the
Court grant FSQ's Motion for Summary Judgment. Unlike a motion

8

to dismiss, a motion for summary judgment is entitled to no
presumption that the facts as alleged are true.  Rather in
prosecuting a motion for summary judgment, the moving party must
present admissible evidence to "show that there is no genuine
issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 585 n.10 (1986); Horowitz v. Fed. Kemper Life
Assurance Co., 57 F.3d. 300, 302 n.1 (3d Cir. 1995).

Consequently, the Court concludes that the doctrine of law
of the case is not applicable and does not mandate a decision in
FSQ's favor.  See, e.g., McKenzie, 219 F.3d at 513; Council of
Alternative Political Parties, 179 F.3d at 69-70; Perez-Ruis, 25
F.3d at 42.  Rather, the Court must consider the evidence
presented, including all of the agreements governing the parties'
relationship, to determine whether FSQ is entitled to a claim
against the Debtors' estates for the PIP Receivable.

    B.   Merits of the Case

        1.   Section 2.8(c) of the Management Agreement

FSQ's summary judgment motion is premised on its assertion
of a claim against the Debtors' estate pursuant to section 2.8(c)
of the Management Agreement.  Section 2.8(c) provides in
pertinent part that:

9

> If and to the extent that there shall be a reduction (a
> "Reduction") in the amount to be paid on any account
> receivable due to [the Debtors] by a Medicaid program
> or the Medicare program for services rendered at any
> Facility from and after the Effective Time (an "IHS
> Government Receivable") by reason of any withholding,
> freeze, restriction, offset or recoupment applied
> against such IHS Government Receivable for an amount
> payable by any [Debtor] to the applicable Third Party
> Payor . . . with respect to services provided on or
> prior to the Effective Time (a "Pre-Effective Date
> Third Party Payor Claim"), then [FSQ] shall have a
> claim against the [Debtors] (a "Reduction Claim") that
> is: (1) in the amount of the Reduction; and (2) of
> equal priority to the priority that would have been
> accorded to the Pre-Effective Date Third Party Payor
> Claim in the [Debtors'] bankruptcies . . . .

(Management Agreement § 2.8(c) (emphasis in original)).

IHS argues, however, that there is no evidence that the
United States offset the PIP Receivable against the False Claims
as part of the US Agreement. In fact, IHS presented affidavits
evidencing that the PIP Receivable was not part of the $17.1
million which was set off against the False Claims.

The Court rejects IHS's argument, however, because the US
Agreement itself evidences that there was not a setoff of
specific accounts against the False Claims. Rather the US
Agreement was a settlement and waiver of all claims that the
United States had against the Debtors and vice versa except for
claims of $19.1 million and $17.1 million which the parties
agreed would be allowed for purposes of setoff only. There was
no delineation of what specific claims the Debtors had against
the United States which were being allowed for purposes of the

10

setoff.  Therefore, the evidence presented is not sufficient to establish that the PIP receivable was not part of the setoff or otherwise released by virtue of the US Agreement.

       2.   <u>Letter Agreement</u>

     IHS asserts that the Letter Agreement modified the Management Agreement and precludes FSQ from asserting any claim for the PIP Receivable.  The Letter Agreement provides in relevant part:

> (1) . . . Except for such payments discussed below, the payment of $1,450,000 shall constitute a full and final reconciliation of all Medicare and Medicaid funds previously received, or that may be received in the future, by [FSQ] or [the Debtors] under the [FSQ Settlement].
>
> (2) . . . [The Debtors] will deliver that portion of any [PIP Payment] attributable to the last six months of calendar year 2000 to [FSQ], without counterclaim or set off, immediately upon its receipt. . . .

(Letter Agreement ¶s 1 & 2).

     IHS contends that under the terms of the Letter Agreement, the Debtors had no obligation to pay FSQ the PIP Receivable unless and until they <u>received</u> payment for it.  Because the United States has not paid the PIP Receivable, IHS asserts that nothing is due to FSQ from IHS.

     The Court disagrees.  The Letter Agreement does resolve all the disputes between the parties except for the PIP Receivable.  The Letter Agreement then states the affirmative duty of the Debtor to deliver any PIP Payment received by it without any right of setoff.  It does not otherwise waive any rights that FSQ

11

has to recover the PIP Receivable that may arise under the Management Agreement itself.  Therefore, FSQ's argument that it has the right to a claim against the Debtors' estate under section 2.8(c) of the Management Agreement is not precluded by the Letter Agreement.

        3.   Stipulation

     IHS argues further, however, that FSQ has no claim for the PIP Receivable because it was released by virtue of the language of the Stipulation itself.  Specifically, IHS points to paragraph 3 of the Stipulation which states in relevant part:

> . . . notwithstanding the assumption and assignment of a Medicare Provider Agreement, any claim of Medicare, the applicable fiscal intermediary, or HHS against any Debtor relating to or arising under such assumed and assigned Medicare Provider Agreement arising prior to the Effective Date is cured and released and each of the IHS Entities and [the United States] waive their respective rights to assert the right to further payments from the other, as the case may be, for underpayments or overpayments relating thereto; and [FSQ], IHS and [the United States] each will consider all cost reporting periods under each Medicare Provider Agreement prior to the Effective Date to be fully and finally closed in accordance with all applicable laws.
> . . .

(Stipulation at ¶ 3 (emphasis added).)  The Stipulation defined the Effective Date to be the date that FSQ obtained a license to operate the facilities.  (Id. at ¶ 1.)

     In fact, this is the position that the United States has taken with the Debtors and in this adversary proceeding: that the Stipulation itself provided that, once FSQ obtained a license for

12

the facilities, the parties would have no claims against each other for any period prior to that date.  (See Defendant United States of America's Memorandum in Support of Motion to Dismiss at 7-8.)

The Court agrees with IHS.  The Stipulation itself provided that, once the Effective Date occurred, the slate would be clean. The United States would have no claims for overpayments made before that date, and IHS and FSQ would have no claims for any under-payments made before that date.

This conclusion is consistent with section 2.8(c) of the Management Agreement.  That section provides that FSQ would have a claim against the Debtors' estate if the United States offset a claim for overpayments made before the Effective Date against sums due FSQ for services rendered after the Effective Date.  The PIP Receivable is not for any services rendered by FSQ after the Effective Date; it is for services rendered during the Transition Period before the Effective Date.

This conclusion is also not inconsistent with the Letter Agreement under which the Debtors were obligated to pay FSQ only if they received payment of the PIP Receivable from the United States.  They did not.

Consequently, the Court concludes that under the parties' agreements, there is nothing due to FSQ from the Debtors' estate for the PIP Receivable.  Summary judgment in favor of IHS is

13

warranted.

IV.  CONCLUSION

For the foregoing reasons the Court will deny the Motion of FSQ for summary judgment and grant the Motion of IHS for summary judgment.

An appropriate Order is attached.

Dated: January 9, 2007                    BY THE COURT:

                                          Mary F. Walrath
                                          United States Bankruptcy Judge

14

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE:                              ) Chapter 11
                                    )
INTEGRATED HEALTH SERVICES,         )
INC., et al.,                       ) Case No. 00-00389
                                    )
            Debtors.                )
                                    )
_____ ) Adversary No. 02-05193
                                    )
FSQ, INC., f/k/a FIVE STAR          )
QUALITY CARE, INC., et al.,         )
            Plaintiffs,             )
    vs.                             )
                                    )
INTEGRATED HEALTH SERVICES,         )
INC., et al.,                       )
            Defendants.             )

## ORDER

**AND NOW,** this **9th** day of **JANUARY, 2007,** upon consideration
of the Cross Motions for Summary Judgment filed by FSQ, Inc., and
IHS Liquidating LLC and for the reasons stated in the attached
Opinion, it is hereby

**ORDERED** that the Motion of FSQ, Inc., for Summary Judgment
is **DENIED**; and it is further

**ORDERED** that the Motion of IHS Liquidating LLC for Summary
Judgment is **GRANTED**.

                            BY THE COURT:

                            Mary F. Walrath
                            Mary F. Walrath
                            United States Bankruptcy Judge

cc: Robert Brady, Esquire[1]

_____

[1] Counsel is to distribute a copy of this Opinion and Order
on all interested parties and file a Certificate of Service with
the Court.

SERVICE LIST

Robert S. Brady, Esquire
Edmon L. Morton, Esquire
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
Counsel for IHS Liquidating LLC

Arthur Steinberg, Esquire
Marc D. Rosenberg, Esquire
Ana M. Alfonso, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
Counsel for IHS Liquidating LLC

Mark Minuti, Esquire
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19899
Counsel for FSQ, Inc.

Gayle Ehrlich, Esquire
Jeffrey E. Francis, Esquire
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
Counsel for FSQ, Inc.

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| INTEGRATED HEALTH SERVICES, INC., *et al.* | ) | |
| | ) | 00-389 (MFW) |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |
| FSQ, INC., *f/k/a* FIVE STAR QUALITY CARE, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Case No. 02-5193 |
| v. | ) | |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | **Dkt. Reference Nos. 119 and 121** |
| | ) | |

## NOTICE OF CROSS-APPEAL

The IHS Liquidating LLC (the "Liquidating LLC") hereby cross-appeals pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(a) from the Order dated as of January 9, 2007, and entered by the United States Bankruptcy Court for the District of Delaware, the Honorable Mary F. Walrath presiding, on January 9, 2007 (Docket No. 119) (the "Order"). This notice of cross-appeal is being filed out of an abundance of caution to preserve the Liquidating LLC's rights to argue on appeal that ample additional grounds existed to grant summary judgment in favor of the Liquidating LLC, which were not the basis of the Order. *See Scott v. University of Delaware et al.*, 601 F.2d 76, 83 (3d Cir. 1979). This notice of cross-appeal is timely because FSQ, Inc., f/k/a Five Star Quality Care, Inc., *et al.*, filed their notice of appeal from the Order on January 16, 2007 (Docket No. 121).

056309.1001

The names of all parties to the Order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| | |
|---|---|
| **Appellant/Cross-Appellee:** | **FSQ, Inc., f/k/a Five Star Quality Care, Inc.,** *et al.* |
| Counsel for Appellant/ Cross-Appellee: | SULLIVAN & WORCESTER LLP |

Gayle P. Ehrlich, Esq.
One Post Office Square
Boston, MA 02109
Phone: (617) 338-2800

| | |
|---|---|
| Co-Counsel for Appellant/ Cross-Appellee: | SAUL EWING LLP |

Mark Minuti, Esquire
222 Delaware Ave., Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
Phone: (302) 421-6840

| | |
|---|---|
| **Appellee/Cross-Appellant:** | **IHS Liquidating LLC** |
| Counsel for Appellee/ Cross-Appellant: | KAYE SCHOLER LLP |

Arthur Steinberg, Esquire
Lester M. Kirshenbaum, Esquire
Ana M. Alfonso, Esquire
425 Park Avenue
New York, New York 10022-3598
Phone: (212) 836-8000

| | |
|---|---|
| Co-Counsel for Appellee/ Cross-Appellant: | YOUNG CONAWAY STARGATT & TAYLOR, LLP |

Robert S. Brady, Esquire
Joseph M. Barry, Esquire
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
Phone: (302) 571-6600

2

Dated:  Wilmington Delaware
        January 26, 2007

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
Joseph M. Barry (No. 4221)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6731

-and-

KAYE SCHOLER LLP
Arthur Steinberg
Ana M. Alfonso
425 Park Avenue
New York, NY 10022-3598
(212) 836-8000

Attorneys for IHS Liquidating LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) |
| | ) Case No. 00-389 (MFW) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| FSQ, INC., f/k/a FIVE STAR QUALITY CARE, INC., et al., | ) |
| | ) Adv. Pro. No. 02-5193 |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF SERVICE

Thomas Hartzell, being duly sworn according to law, deposes and says that he is employed by the law firm of Young Conaway Stargatt & Taylor, LLP, attorneys for the Liquidating LLC in the within captioned matter, and that on the 26th day of January 2007, he caused a copy of the attached **Notice of Cross-Appeal** to be served, as indicated, upon those parties on the attached service list.

_____
Thomas Hartzell

SWORN TO AND SUBSCRIBED before me this _____ day of January 2007.

_____
Notary Public

KIMBERLY A. BECK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Oct. 1, 2010

Gayle P. Ehrlich, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
(FSQ, Inc.)
*First Class Mail*

Mark Minuti, Esquire
Saul Ewing LLP
222 Delaware Ave., Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
(FSQ, Inc).
*Hand Delivery*

DB01:1146929.7

056309.1001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:  Integrated Health Services, Inc., *et al*. | ) | |
| | ) | |
| INTEGRATED HEALTH SERVICES INC., *et al*., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-112 (GMS) |
| | ) | |
| FSQ, INC. f/k/a Five Star Quality Care Inc., *et al*., | ) | |
| | ) | |
| Appellees. | ) | Bankruptcy Case No. 00-389 |
| | ) | Adversary Proceeding No. 02-5193 |
| | ) | |

**ORDER GRANTING APPELLANTS, CROSS-APPELLEES'
MOTION TO DISMISS CROSS-APPEAL**

THE COURT, having considered Appellants, Cross-Appellees FSQ, Inc. *et. al.*'s Motion

to Dismiss Cross-Appeal (the "Motion"), and any response(s) thereto, and good cause having

been shown, IT IS HEREBY ORDERED:

1.   The Motion is GRANTED.

2.   Integrated Liquidating LLC's cross-appeal docketed at Civil Action No. 07-112 is

DISMISSED.

_____
Gregory M. Sleet
United States District Court Judge

Dated:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:  Integrated Health Services, Inc., *et al.* | ) | |
| | ) | |
| INTEGRATED HEALTH SERVICES INC., *et al.*, | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-112 (GMS) |
| | ) | |
| FSQ, INC. f/k/a Five Star Quality Care Inc., *et al.*, | ) | |
| | ) | |
| Appellee | ) | Bankruptcy Case No. 00-389 |
| | ) | Adversary Proceeding No. 02-5193 |
| | ) | |

## CERTIFICATE OF SERVICE

I, Mark Minuti, Esquire, hereby certify that on May 24, 2007 I caused a copy of the foregoing **Motion Of Appellants To Dismiss Cross-Appeal** to be served on the parties on the attached service list in the manner indicated.

Mark Minuti (No. 2659)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P. O. Box 1266
Wilmington, DE  19899
(302) 421-6800

548238 1 5/24/07

**FSQ, INC. v. INTEGRATED HEALTH SERVICES, INC.**
**Service List**

**Via Hand Delivery:**
Robert S. Brady, Esquire
Edmon L. Morton, Esquire
Joseph M. Barry, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899


**Via U.S. Mail:**
Michael J. Crames, Esquire
Arthur Steinberg, Esquire
Marc D. Rosenberg, Esquire
Ana Alfonso, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

Jeannine Lesperance, Esquire
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20004